# Richmond

FRANK WHITLEY v. W. K. CUNNINGHAM, JR., SUPERINTENDENT, ETC.

April 27, 1964.

Record No. 5723.

Present, All the Justices.

*Richard D. Mattox* (*Lowell K. Clarke; Moody, Mattox, Atkinson & Young,* on brief), for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Frank Whitley, a prisoner in the State penitentiary, filed in the court below on July 9, 1962, his petition for a writ of habeas corpus, alleging that he had been convicted and sentenced in violation of

his constitutional rights. Thereupon, on July 13, 1962, the court entered a show cause order to the Superintendent and appointed Richard H. Mattox, a practicing attorney, to represent the petitioner. The Superintendent filed his answer and on October 26 and October 30, 1962, the court heard the evidence and thereafter entered its order denying and dismissing the petition, and petitioner appeals.

The trials at which the petitioner received the sentences complained of took place in the same court on September 27, 1961. The petitioner asserted in his petition that at those trials he was denied effective assistance of counsel, the right to witnesses in his behalf and the right to a jury trial, and that he was beaten by police officers who forced him to confess.

The petitioner testified that he did not know who prepared his petition, but that it was somebody in the penitentiary and it was "passed on" to him. His testimony showed that he knew little about what it contained. It ranged far and wide and the evidence disclosed that most of its allegations were untrue and irresponsible. The evidence showed conclusively that he was not beaten by the officers at any time and that he was not denied the right to any witnesses that he asked for. Nor does the evidence show that he was improperly denied a jury trial. To some of the charges against him he pleaded guilty and to others he pleaded not guilty and waived trial by jury. In those circumstances it was the duty of the court to try the petitioner. Const. of Va., § 8.

It is clear from the evidence that the only allegation of any substance made by the petition is that at petitioner's trial on September 27, 1961, he did not have effective assistance of counsel.

"It is well settled that the right of an accused to have effective assistance of counsel is guaranteed by the due process clause of the Federal Constitution and the Virginia Bill of Rights." *Morris v. Smyth*, 202 Va. 832, 833, 120 S.E.2d 465, 466, and cases there cited; also *Gideon v. Wainwright*, 372 U.S. 335, 339, 83 S.Ct. 792, 9 L.ed.2d 799, 93 A.L.R.2d 733.

The word "effective" in this context has a restricted meaning. As pointed out in the well-reasoned opinion by Judge Prettyman, in *Mitchell v. United States*, 104 U.S. App. D.C. 57, 259 F.2d 787 (cert. den. 358 U.S. 850, 79 S.Ct. 81, 3 L.ed.2d 86), it came into the law in *Powell v. Alabama*,* "and was used by the Supreme Court to de-

---

* 287 U.S. 45, 53 S.Ct. 55, 77 L.ed. 158.

scribe a procedural requirement. * * ." " 'Effective' assistance of counsel obviously means something other than successful assistance." (259 F.2d at 789.)

Whether the petitioner had assistance of counsel in the constitutional sense at his trials on September 27, 1961, is a question that must be answered in the light of the evidence at the hearings on the habeas corpus petition, which came primarily from petitioner's witnesses and included the officers who made the arrest and the attorney appointed to defend him. It was in substance as follows:

Petitioner, who will hereafter be referred to as defendant, was arrested in the City of Portsmouth about 11 a.m. on May 11, 1961, by three officers, members of the Detective Bureau of the Portsmouth Police Department, for breaking into and stealing articles from an automobile. He was then in possession of articles later identified by the owners as having been stolen. A search warrant was issued, defendant's home was searched and other articles thought to have been stolen were found. Five or six days were spent in finding the owners and getting the articles identified.

Upon his arrest the defendant was taken to the police station and there questioned by the officers at intervals on May 11, 12, 14 and 19. He was questioned not more than an hour or two at a time and when not being questioned he was kept in jail. As a result of the questioning the defendant signed three confessions on May 11, one at 9 p.m., one at 9:30 p.m. and one at 10 p.m. He signed other confessions on May 14 and May 19, after the officers were able to get identification of recovered articles. Warrants were issued as charges were admitted by the defendant. The officers testified that all the confessions were made by the defendant without any force or threats. One of the officers testified that defendant was "told of his rights," including the right to have a lawyer.

The warrants issued were docketed for preliminary hearings in the Portsmouth Municipal Court as follows:

On May 12, four charges: one of robbery by force, two of grand larceny and one of carrying a concealed weapon. These were continued to May 19. On May 13, five charges were docketed, three being for robbery by force and two for grand larceny; and on May 20, ten charges: six of grand larceny and four of petit larceny. All of these nineteen charges were then continued to May 26.

At the hearings on May 26 the defendant was found guilty of four petit larceny charges and one charge of carrying a concealed weapon

and sentenced to a total of thirty-nine months in jail and $350 fines. The deputy clerk of the Municipal Court testified that at the same time eight warrants charging the defendant with grand larceny and four warrants charging him with robbery by force were sent to the Court of Hustings grand jury, but that one of the grand larceny charges was a duplicate charge. She further testified, however, that thirteen counts (warrants) against the defendant were sent to the grand jury. It appears in the record that two of the indictments afterwards returned by the grand jury were dismissed on *nolle prosequi* by the Commonwealth, one being for robbery and the other for grand larceny.

The certified prison record of the defendant shows that on the defendant's trials on September 27, 1961, he was sentenced to four years each on seven indictments for grand larceny and fifteen years each on three indictments for robbery, a total term of seventy-three years.

On September 27, 1961, when the cases against the defendant were called, the court entered an order stating that the defendant was indicted for eight charges of grand larceny and four charges of robbery, was unable to obtain counsel for his defense, and "the Court doth appoint Norman Olitsky, an able and competent attorney, to represent him." The defendant testified that he had not been told that he was to be tried on that date.

Mr. Olitsky testified that his appointment was his first contact or acquaintance with the defendant and with the cases against him; that he took the defendant into a conference room and asked him about witnesses but defendant did not name any; that then the defendant said he had made confessions, and "I believe I advised him * * because of the enormity of the crimes I would suggest, even though he had admitted committing them, to plead not guilty, in other words, to really put the burden on the Commonwealth of proving that he had commited the robbery or robberies, whatever they were—there were several charges."

He was asked whether he read the confessions before the trial started and he replied that he would say he did read them before they were introduced, but that he did not bother as to their dates. He felt almost certain that he read the confessions to the defendant, but did not remember. He recalled that there were some pleas of guilty and some pleas of not guilty and stated that if the defendant pleaded not guilty to any of the charges, it was because "he told me he wasn't guilty of it." He asked the defendant, he said, about

the statements and he, the defendant, said he had admitted to it and then he, Mr. Olitsky, suggested: "Well, then if you have admitted to the crime, then it would be a good idea to go ahead and plead guilty and ask the court to give you its mercy."

He stated that if the defendant had given him the name of some witnesses that he could have used, he would have asked for a continuance, because the judge had asked him if he needed a continuance and he informed the court that he did not "become I didn't. The man had no witnesses. * * There wasn't anything I could do but just try to see any technical errors that the Commonwealth could possibly commit while the trial was on." He testified that if some of the pleas were guilty to robberies, "I definitely advised him to plead not guilty even though he had admitted he was guilty." He said that the defendant never told him that he was not guilty of any of these charges. He was asked whether there were any charges which the defendant said he did not commit, and he replied, "Probably to the ones that he pleaded not guilty to." He said the defendant never told him that the confessions that he wrote were lies or incorrect. Asked about his preparation for the cases, he replied, "I went over each and every charge with the man and went over everything that he had written down and discussed it with him and discussed each and every charge and advised him what I wanted to do * *."

He was then asked how long he discussed the cases with the defendant prior to the trials and he replied, "I don't know. It could have been an hour, could have been a half an hour, could have been twenty minutes. I really don't remember, but I do know I went over each and every indictment with him. * * I don't think I talked to him more than an hour."

He did not recall, he said, at what point two of the cases were "nolle prossed" and he did not remember whether there were ten or twelve cases in which he was appointed. He was asked whether he thought one hour was sufficient preparation for twelve felony cases, and he replied, "In this case it could have taken maybe only ten minutes to prepare for the trial. When a man pleads guilty— tells me that he's guilty of an offense and he has no witnesses, then the only thing I can do is cross-examine the Commonwealth's witnesses and try to break them down. I don't think time is really the crux of the situation in my mind. I probably did as well for him that day as if I had him with me for a week."

He said that he advised the defendant as to his right to trial by jury; that the defendant was told that he could have a choice and that he could have these cases continued "because I was just appointed to the case," and that the defendant replied that he was ready to go to trial that day.

He was asked whether he interviewed any of the police officers or any of the alleged victims and he replied, "I don't think so, not when he told me that he had committed the crime." He did not say, and it is not otherwise indicated, that he questioned any witness before or during the trial other than the defendant. To the question of whether the defendant told him that he had committed all these crimes, his answer was, "Now, I don't remember. I really don't remember. You'll have to go to the record."

One of the officers, Officer Butt, said that he testified and read the statements of the defendant at the trial, and that all the cases were tried the same day. He remembered, he said, "that I was up and down one case right after the other. * * They'd take one case at the time, put the witness on and then I would testify as to what I did, and then they'd call other officers and then they'd go into the next case." Another officer thought that Officer Butt did all the testifying in the cases.

The assistant Commonwealth's attorney testified that there was evidence offered in each case in addition to the statements of the defendant, and that the *corpus delicti* was proved in each case independently of the defendant's confession.

The question in the case is not as to the professional competence of Mr. Olitsky. The trial court described his as able and competent, and we do not question his ability. There is no basis here for any charge that the trial court denied to this defendant any right to which he was entitled with respect to the appointment of counsel or otherwise. But the question here is whether the defendant had from the counsel appointed by the court the "effective assistance" guaranteed to the defendant by the Constitution of Virginia and the Federal Constitution.

The defendant here was illiterate. He could not read and he could not write beyond signing his name. The charges against him were serious. Four of them were that he had committed robbery by force. He was convicted on three of these charges and sentenced thereon to 45 years in the penitentiary. Robbery is an offense against the person. At common law it means taking with intent to steal

the personal property of another from his person or in his presence, against his will, by violence or intimidation. *Mason* v. *Commonwealth,* 200 Va. 253, 105 S.E.2d 149.

Section 18.1-91 of the Code provides that if a person commit robbery by partial strangulation, or suffocation, or by striking or beating, or other violence to the person, he shall be punished with death, or by imprisonment for life, or other term not less than five years; and if he commits robbery in any other mode, he shall be confined in the penitentiary not less than five nor more than twenty years.

Larceny from the person of money or property of the value of five dollars or more is grand larceny, punishable by confinement in the penitentiary not less than one nor more than twenty years, or by jail sentence or fine, or both. Code, § 18.1-100.

There are many distinctions in the fields of larceny and robbery. It is hardly to be doubted that this defendant did not know of these distinctions. As we said of the prisoner in *McDorman* v. *Smyth,* 188, Va. 474, 482, 50 S.E.2d 423, 427: "He was incapable of apprehending the range of statutory offenses included in the indictment[s], the range of allowable punishments thereunder, possible defenses to the charges, and circumstances in mitigation thereof, and of making a free and intelligent decision in respect to his plea. **."

We held there that the prisoner had sustained the burden of proof "that for want of assistance of counsel 'an ingredient of unfairness actively operated in the process that resulted in his confinement.' "

There is even less doubt that the hour or less used by this defendant's attorney in preparation for the trials was wholly insufficient to enable him to read and understand the ten or twelve indictments, to read and understand the written confessions made by the defendant, and the time and place and manner of their making, so as to be assured that the confessions to robbery were to acts amounting to robbery, and that the confessions to grand larceny were to acts which constituted that crime.

These confessions were obviously the main evidence to establish the guilt of the defendant. They were made prior to and used at the preliminary hearings before counsel was appointed for the defendant. Counsel appointed only when the cases were called for trial on the indictments, who had never seen the defendant before, and knew nothing about the cases, could render him no assistance

worthy of the name that did not include some inquiry from the officers as to the facts and the confessions, and at least as to the accurate number of the indictments.

In the *Mitchell* case, *supra,* it is said that the Supreme Court has clearly established that an indigent accused is entitled to counsel, if he wants one, and "that appointed counsel must have reasonable opportunity to prepare for his task of defense." 259 F.2d at 790.

Defendant's appointed counsel could have had ample time to prepare for his assigned task if he had requested it from the court. As stated the court inquired of him whether he needed a continuance and he replied that he did not; and, "of course," said the court, "under those circumstances [I] knew nothing else to do but to proceed to trial."

"* * The act of appointing counsel is not enough if in the circumstances the traverser is not afforded in any substantial sense professional advice and assistance. *Jones* v. *Cunningham,* 297 F.2d 851, 855.

His service should be of such character "as to preserve the essential integrity of the proceedings as a trial in a court of justice." *United States* v. *Ragen,* 176 F.2d 579, 586.

It is true that the defendant is not a stranger to court proceedings and his record does not commend him. His prison record states that in 1950 he was convicted in the Hustings Court of robbery and rape and sentenced to eighteen years in the penitentiary, was granted parole in 1958, which has now been revoked, and he has more than five years remaining to be served on those convictions. It may also be true that he will not profit by a retrial of the many charges against him. Nevertheless, he is entitled to a trial which meets the constitutional requirement with respect to the assistance of counsel, and we conclude that the evidence establishes that he has not had such trial.

The order appealed from must therefore be reversed, the convictions set aside and the cases remanded to said Hustings Court with direction to issue the writ of habeas corpus and require that the defendant be returned to the custody of said court to be tried on the indictments here involved.

*Reversed and remanded.*