**John Everett HORNE, Appellant,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 10273.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 6, 1966.

Decided Feb. 24, 1966.

------◆------

Alton E. Bryant, Jr., Richmond, Va. (Court-assigned counsel), for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, J. SPENCER BELL, Circuit Judge, and ALGERNON L. BUTLER, District Judge.

HAYNSWORTH, Chief Judge:

A Virginia prisoner attacks his recidivist conviction asserting fatal deficiency in his representation by his court-appointed lawyer. The lawyer had too many assigned clients, it is said, and his search for defects in the underlying conviction did not extend to an inspection of the formal court records. The District Court found no constitutional infirmity, however, and we find none.

When the Supreme Court held in Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442, that a Virginia prisoner had a constitutional right to counsel at a recidivist hearing, Horne was among the many who had to be relieved of service of recidivist sentences or retried. Generally, Virginia chose retrial.

The Circuit Court of the City of Richmond appointed a lawyer, of unquestioned competence, to represent several hundred previously convicted recidivists. Anticipating the Supreme Court's decision in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, in conferences with Virginia's Attorney General and the Commonwealth's Attorney, he obtained an agreement for the elimination of any underlying conviction in which there was substantial doubt that the defendant was represented by counsel. He developed an interview report form or check sheet which he used to record his interviews with each of his assigned clients. Forearmed with their identification records, including their fingerprints, he explored with each one the question of identity and possible questions of invalidity of the underlying convictions. With respect to the latter inquiry, he did not go to the original sources to scrutinize court records unless the client, in the interview, provided him with some lead. Thus when a client, in an interview, admitted the prior convictions as the result of trials in which he was represented by counsel and questions designed to elicit information of other possible infirmities developed no potentially fruitful avenues of investigation, the lawyer rested with what he had, except to develop bases of requests for mitigation of punishment.

In 1926, Horne had been convicted in Virginia of manslaughter and in the mid-thirties of statutory rape. In 1961, he was convicted of second degree murder. In the interims between these Virginia convictions he had served sentences in federal prisons for whiskey offenses, but these did not affect his recidivist retrial.

On the day that Horne was retried as a recidivist, his court-assigned lawyer "tried" seventy-five other such cases. Many of such "trials," however, con-

sisted simply of the Commonwealth's withdrawal, by previous agreement, of its charges, based upon doubt of the validity of the underlying convictions. Those "trials" in which the Commonwealth withdrew its charges took only about thirty seconds.

In Horne's case, his attorney did not attack the validity of the underlying convictions. Instead, he sought mitigation. He stressed the long lapse of time between the convictions. He obtained the concurrence of the prosecutor that the third conviction, though nominally one of murder in the second degree, should be considered as one of manslaughter in light of the short sentence of five years which had been imposed. The result was suspension of six of the ten year sentence imposed upon him as a third offender.[1]

Attack on the adequacy of his lawyer's representation is double-barreled. First, it is said, he had too many clients and too many cases to try in a day. Secondly, it is said, he should have personally examined the records of each of the underlying convictions for possible infirmities.

█ In its first aspect, we think the state made a reasonable choice in appointing one lawyer to represent so many with common problems. Done with the expectation that he would spend months making himself knowledgeable in the field and preparing himself for trial, as he did, and with the understanding that any continuance he requested would be granted, we cannot say the arrangement promised less effective representation than an appointment of a large miscellany of lawyers, each to represent only one, or a few, prisoners. The arrangement may have made him more effective as well as more experienced in this immediate area, than other practitioners.

█ The fact that he "tried" seventy-six cases in one day is of no great significance, when many of the "trials" were consent dismissals. He went to trial in Horne's case because he felt he was pre-

pared. He was not ineffective in his presentation of the matter in mitigation, for he obtained a suspension of six-tenths of the sentence. He did not neglect any point which he had any reason to believe might be available in Horne's behalf. If his pretrial investigation was not defective, therefore, there is no showing of any ineffectiveness of counsel.

█ In this case, the lawyer's failure to go to Botetourt and Roanoke Counties, in the Valley of Virginia, to inspect the records of the underlying convictions does not render the District Court's conclusion impermissible. The lawyer testified he would have examined them if his inquiries of Horne had given him any reason to suspect the existence of some fatal defect. This seems not unreasonable. While Horne is a man of limited education, there was no apparent reason for the lawyer to mistrust his answers to the lawyer's inquiries about the circumstances of the earlier convictions.

This conclusion seems particularly appropriate when, with a succession of court-appointed lawyers in these collateral proceedings, no one has yet suggested that there is any potentially fatal defect or infirmity in the records of any of the underlying convictions. If, even now, we had reason to suspect that further inquiry might be fruitful, the case, as to the adequacy of the pretrial preparation, might stand in a different light. As it is, we think the record warrants the District Court's conclusion that the lawyer was justified in accepting Horne's answers to his questions as foreclosing the need of further investigation.

██ A prisoner is entitled to effective representation, but the fact that something which might have been done was not done, in the absence of a showing of any harmful consequence, is not enough to warrant overturning convictions on petitions for habeas corpus. See Root v. Cunningham, 4 Cir., 344 F.2d 1.

Affirmed.

---

1. Code of Virginia, 1950 § 53–296 provides a maximum recidivist sentence of five years for a second offender. There is no maximum for a third offender. From the cases we see, ten years appears to be the norm in Virginia for third offenders.