# Richmond

C. C. PEYTON, SUPERINTENDENT, ETC. v. JAMES E. FIELDS.

April 25, 1966.

Record No. 6166.

Present, All the Justices.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the plaintiff in error.

*William D. Martin, III,* for the defendant in error.

SNEAD, J., delivered the opinion of the court.

On July 1, 1964, James E. Fields, sometimes hereinafter referred to as defendant, filed in the court below a petition for a writ of *habeas corpus ad subjiciendum* in which he claimed that he was being unlawfully detained by C. C. Peyton, Superintendent of the Virginia State Penitentiary. He made the customary and often abused claim for relief, i.e., that he was denied due process of law because he was not afforded effective assistance by his court-appointed counsel when he was tried, convicted and sentenced for statutory burglary and escape on July 7, 1959. At the conclusion of a plenary hearing had on the petition, the trial court ordered that the writ be granted, remanded Fields to the custody of Peyton, and gave the Commonwealth's attorney 30 days within which to elect whether to retry him or to "release him from the burden of the judgment as imposed on July 7, 1959". As a result of the entry of this order we granted Peyton a writ of error.

The sole question presented in this appeal is whether the court erred in issuing the writ of *habeas corpus* on the ground that defendant Fields was not effectively represented by his court-appointed counsel.

The record discloses that on June 25, 1959, Fields was serving a sentence in State Convict Camp No. 24 in Bedford county imposed by the Circuit Court of Giles County for a conviction of statutory burglary. On that day he escaped from custody and was apprehended approximately an hour later. He was subsequently indicted for the escape and for statutory burglary committed while he was at large. On June 26, Fields was taken to the Bedford county jail where he remained until July 7, the day of his trial. While he was in jail no one discussed with him the offenses for which he was charged nor did any law enforcement official attempt to obtain a statement from him.

On July 7, Fields was brought before the court to stand trial upon the indictments for escape and statutory burglary. Before the trial commenced the court ascertained from the defendant that he was not represented by counsel and appointed Lacey E. Putney, a local attorney, to defend him. According to the court's order, after private consultation with Putney, Fields stated to the court that "he was ready for trial and desired to be tried" on that day. He then waived arraignment and tendered in person a plea of guilty to both indictments. The court, after being satisfied that he understood the nature and effect of the pleas, heard the evidence, found him guilty as charged, and sentenced him to serve a term of three years on each indictment.

Here, defendant challenges only the validity of the statutory burglary conviction.

According to Fields, about ten to fifteeen minutes elapsed from the time that Putney was appointed to the time that the trial itself commenced. Fields remained in the courtroom during this period. He talked with Putney "on a bench" in the courtroom and did not see Putney talk with anyone else. Putney did not question him concerning "the facts in the offense" with which he was charged (statutory burglary), and he did not ask if he was guilty. Putney advised him what the maximum punishment was "for the offense involved", told him that "he thought * * * the Commonwealth would recommend a three year sentence on a plea of guilty", and informed him that he "thought it was advisable" to enter such a plea. When asked "What else did he [Putney] say", Fields replied: "Actually, I don't remember it has been so long, he asked me if I wanted to plead guilty."

Fields admitted on cross-examination, however, that he had had previous "experience with the Courts," that at the time he talked with Putney he understood the nature of the two charges against him; that he knew of no witnesses who could be called in his behalf; that he was aware of his constitutional rights "as far as a jury trial was concerned and matters of that kind", and that he knew that he could enter a plea of not guilty.

David Bagby, a co-defendant, testified that he was present in the courtroom on the day Fields was tried. He was asked:

"Q. Did he [Putney] ask him [Fields] to tell his story?

"A. No, sir, not that I can remember this was quite a long time ago.

"Q. Well, Mr. Putney talked—

"A. It wasn't long it didn't last but a minute he didn't talk to him but a few minutes."

On cross-examination he stated that he did not know of any witnesses who could have been called to testify at the trial on behalf of Fields and that "* * * I ain't got no recollection of time."

Putney testified that at the time of the *habeas corpus* hearing he had been a member of the House of Delegates of the General Assembly of Virginia since 1962; that he had been practicing law in Bedford county for seven and a half years, and that prior to his appointment to represent defendant he had represented felons on both a retained and an appointed basis. He stated that he was "sure" that he had made notes on the Fields case but that he was unable to locate them because his office had been moved twice since

the trial. He also stated that although it had been about five years since he had been appointed to represent Fields, he remembered "the incident".

In response to a question as to whether he had conversed with anyone other than Fields relative to the case prior to the trial, Putney said that in every case in which he had been appointed to represent an accused he had discussed "the matter" with the sheriff or the investigating officer; that in this case he was "pretty sure" that he talked with the sheriff; that he always talked with the Commonwealth's attorney and reviewed the file "as to previous records," etc., and that he did not recall ever representing a defendant when he did not "go over" the case with him and ascertain "his educational background, family connections and things of this type." He said: "I do it in all cases and I [am] certainly sure that I did it in this one."

Putney further testified that he did not recall Fields requesting that a continuance be granted; that his "recollection" was that Fields was not able to provide a defense to the charges in the indictments, and that no defense was available "as far as I was concerned."

Putney was asked on cross-examination whether he discussed "the facts involved with Mr. Fields in this particular case". He replied, "I don't recall going over the facts in detail with Mr. Fields as far as talking to him in this room or here in the Courtroom as he testified or any particular place, I do know that I talked to him about the case." He was also questioned as to whether he asked defendant "for his story of what happened". He said, "I can only answer by saying that I have never represented an accused without asking him to relate to me what happened and then talk to the officers and get their version of it."

The court's order awarding Fields a writ of *habeas corpus* provided in part:

"* * * [T]he total amount of time which elapsed from appointment of counsel to the actual sentencing of the Petitioner amounted to fifteen or thirty minutes and the Court doth further find that positive evidence offered in the case and unrefuted indicates that the sole person talked to by Court appointed counsel for the Petitioner was the Commonwealth's Attorney who prosecuted the case and the Court doth further find that other positive evidence indicates that the only conference held between Petitioner and his court appointed counsel occurred on the day of trial just prior to the trial in the Court room while Court was in session."

Peyton, the appellant, contends that Fields did not adduce evidence

of any defense which could have been presented to the court during his trial; that he "failed to show any prejudice in connection with his trial", and that the court's finding that Fields had been ineffectively represented by counsel was without sufficient evidence to support it.

Fields, on the other hand, says that he "has borne the burden of proving his allegations of ineffective representation"; that Putney's representation did not amount to sufficient professional assistance to enable him to intelligently decide whether or not to tender a plea of guilty, and that prejudice to him is apparent from the record.

" 'It is well settled that the right of an accused to have effective assistance of counsel is guaranteed by the due process clause of the Federal Constitution and the Virginia Bill of Rights.' *Morris* v. *Smyth,* 202 Va. 832, 833, 120 S.E. 2d 465, 466, and cases there cited; also *Gideon* v. *Wainwright,* 372 U.S. 335, 339, 83 S.Ct. 792, 9 L.ed. 2d 799, 93 A.L.R. 2d 733.

"The word 'effective' in this context has a restricted meaning. As pointed out in the well-reasoned opinion by Judge Prettyman, in *Mitchell* v. *United States,* 104 U.S. App. D.C. 57, 259 F. 2d 787 (cert. den. 358 U.S. 850, 79 S.Ct. 81, 3 L.ed. 2d 86), it came into the law in *Powell* v. *Alabama,* [287 U.S. 45, 53 S.Ct. 55, 77 L.ed. 158] 'and was used by the Supreme Court to describe a procedural requirement. * *.' ' "Effective" assistance of counsel obviously means something other than successful assistance.' (259 F. 2d at 789)" *Whitley* v. *Cunningham,* 205 Va. 251, 252, 253, 135 S. E. 2d 823.

It is also well settled that one serving a sentence in the penitentiary who seeks his release by *habeas corpus* on the ground of ineffective assistance of counsel has the burden of proving the charge made. *State ex rel. Clark* v. *Adams,* 144 W.Va. 771, 776, 777, 111 S.E. 2d 336, 339, 340, 89 A.L.R. 2d 528, cert. den. 363 U.S. 807, 80 S.Ct. 1242, 4 L.ed. 2d 1149; *State ex rel. Robison* v. *Boles,*      W.Va.      , 142 S.E. 2d 55, 58; *State ex rel. Owens* v. *King,*      W.Va.   142 S.E.2d 880, 882; 9 M.J., Habeas Corpus, § 8, p. 311; 25 Am. Jur., Habeas Corpus, § 150. The denial of a petitioner's constitutional rights must be proved by a preponderance of the evidence. *Johnson* v. *Zerbst,* 304 U.S. 458, 468, 469, 58 S.Ct. 1019, 82 L.ed. 1461; *Walker* v. *Johnston,* 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.ed. 830; *Hawk* v. *Olson,* 326 U.S. 271, 279, 66 S.Ct. 116, 90 L.ed. 61; *Behrens* v. *Hironimus,* 166 F.2d 245, 248. See also *Smyth* v. *Godwin,* 188 Va. 753, 772, 773, 51 S.E. 2d 230, cert. den. 337 U.S. 946, 69 S.Ct. 1503, 93 L.ed. 1748.

"* * * Ordinarily, one is deprived of effective assistance of counsel only in those extreme instances where the representation is so transparently inadequate as to make a farce of the trial. Snead v. Smyth, 273 F. 2d 838 (4th Cir. 1959). * * *." *Root* v. *Cunningham*, 344 F. 2d 1, 3 (1965). See also 21 Am. Jur. 2d, Criminal Law, § 319, p. 348 and § 321, p. 350.

In the recent case of *Horne* v. *Peyton*, 356 F. 2d 631 (4th Cir., decided February 24, 1966), the court stated:

"A prisoner is entitled to effective representation, but the fact that something which might have been done was not done, in the absence of a showing of any harmful consequence, is not enough to warrant overturning convictions on petitions for habeas corpus. See Root v. Cunningham, 4 Cir., 344 F. 2d 1." See also *Goodson* v. *Peyton*, 351 F. 2d 905, 909.

■ As has been stated, the court below found that the Commonwealth's attorney was the only person with whom counsel for Fields talked about the case; that the total time which elapsed between the appointment of counsel and the time of sentencing amounted to "fifteen or thirty minutes", and that the only conference held between Fields and his counsel occurred "on the day of trial just prior to the trial in the Court room while Court was in session." However, these facts, standing alone, were not sufficient to establish that defendant's counsel was ineffective. They did not show that the representation afforded defendant was so transparently inadequate as to make a farce of the trial.

The evidence conclusively establishes that at the time of the trial complained of Fields had had previous criminal court experience; that he understood the nature of the two charges against him; that he knew of no witnesses who could have been called to testify in his behalf; that he was aware of his constitutional rights "as far as a jury trial was concerned and matters of that kind"; that he stated to the court that he was ready for trial and desired to be tried at that time, and that there was no defense which could have been offered to the two relatively simple charges.

Counsel was certainly not required to fabricate a defense, and as was said in *United States* v. *Ray*, 351 F. 2d 554, 555, "There can be no predetermination of the length of time needed by court-appointed counsel to prepare for trial since the requirements will vary greatly and what may be a reasonable time in one case could be quite unreasonable in another."

The record shows that Fields agreed to accept the Commonwealth attorney's recommendation of three years for the statutory burglary charge which was well within the terms of the statute (§ 18-161, Code of 1950, now § 18.1-89).

The evidence falls short of establishing that defendant's counsel failed to do anything that he should have done which prejudiced defendant's trial in any way, and in such a case a showing of prejudice or harmful consequence is required before "overturning convictions on petitions for habeas corpus." *Horne* v. *Peyton, supra.*

The record indicates that the court below, in awarding *habeas corpus,* was influenced by our decision in *Whitley* v. *Cunningham, supra,* and Fields places great reliance upon it in support of his position. In our view, the facts in that case are vastly different from the facts of the case at bar. Hence, the *Whitley* case is not controlling here.

We hold that defendant Fields failed to establish by proof that he was denied his constitutional right to the effective assistance of counsel and that the court erred in awarding him a writ of *habeas corpus.* The order appealed from is therefore reversed; the petition for a writ of *habeas corpus ad subjiciendum* dismissed, and the defendant remanded to the custody of C. C. Peyton, Superintendent of the Virginia State Penitentiary.

*Reversed.*