# Staunton

## C. C. Peyton, Superintendent of the Virginia State Penitentiary v. Jessie J. Ellyson.

September 9, 1966.

Record No. 6248.

Present, All the Justices.

*Reno S. Harp, III, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the plaintiff in error.

*Edward L. Fox*, for the defendant in error.

SNEAD, J., delivered the opinion of the court.

C. C. Peyton, Superintendent of the Virginia State Penitentiary, appellant, appealed from a judgment of the Circuit Court of Prince William County awarding Jessie J. Ellyson, sometimes hereinafter called defendant, a writ of *habeas corpus* and adjudicating that a twelve-year sentence imposed upon him for robbery, under which he was being detained, is null and void.

Initially, defendant's petition for a writ of *habeas corpus* was filed in this court. We awarded him a writ returnable to the Circuit Court of Prince William County for a hearing and a determination of the matters set forth in his petition. After a plenary hearing that court granted the relief prayed for on the sole ground that court-appointed counsel did not provide defendant with effective assistance at his trial for robbery.

The crucial question presented by appellant's assignments of error is whether the trial court erred in sustaining defendant's allegation that he was ineffectively represented by counsel.

Defendant has assigned cross-errors which will be discussed *infra*.

The record discloses that the robbery occurred on July 20, 1962, in Prince William county, and that defendant was not apprehended until October 8. Following his arrest on that date upon a warrant previously issued charging him with robbery, defendant was taken to the Prince William county jail, finger-printed and questioned for about an hour. Later, defendant waived a preliminary hearing in writing in the County Court. Until he was brought before the Circuit Court of Prince William County he was neither advised of his right to have counsel nor did he request counsel. On October 12 defendant appeared before that court and it was ascertained that he was not represented by counsel and the court appointed Percy Thornton, Jr., an experienced attorney, to defend him. After having been advised by the court of his right to be indicted by the grand jury and after consultation with his attorney, defendant in open court waived in writing an indictment and agreed to be tried on the charge contained in the warrant as provided by Code, § 19.1-162.

Following his arraignment on October 12 defendant in person entered a plea of guilty to the charge in the warrant. According to the court's order evidence was heard, the accused was found guilty of robbery as charged, and the matter was referred to a probation officer for a written presentence report. The officer presented his report to the court on November 9, at which time the Commonwealth's attorney, defendant and his counsel were present. At the conclusion of the hearing defendant was sentenced to confinement in the State Penitentiary for a term of 12 years.

Defendant testified that Thornton, his attorney, talked to him "ten to fifteen minutes" in a "little room" adjoining the courtroom before he entered his plea of guilty; that "just about all that was discussed, was how much time I could get"; that he told Thornton he was going to plead guilty, and that he did not remember that any facts of the case were discussed. Later, however, he denied that the facts were discussed.

Thornton testified that the conference he had with defendant consumed between fifteen and thirty minutes; that he had read about the robbery in the newspapers, but he did not rely upon this information; that he knew John Slager, a co-defendant, had already pleaded guilty to the crime, and that he discussed the case with the Commonwealth's attorney "for a few minutes, in regards to the details of the case". He further stated that before he talked with

defendant he had information that the victim of the robbery and two other eyewitnesses could identify the persons implicated in the robbery; that he told defendant that he could have a jury trial if he so desired, but that he recommended a plea of guilty, because in his "honest opinion" he thought defendant would "fare better"; that he did not persuade defendant to plead guilty; that he understood that defendant considered himself guilty and "desired the case to move along", and that defendant never complained to him about the manner in which he was represented. Thornton was asked on cross-examination:

"Q. Did you go into the facts of the accusation with him? The facts of the crime alleged?

"A. As I recall, he admitted to me that this was the crime that he did commit. There wasn't any question about it. And I don't recall going into a great deal of the details. It was simply a question that the crime had been committed, and he certainly had participated in it. And the eyewitnesses, and so forth, were available.

"I think the thing that impressed me most were those eyewitnesses, with respect to how he could possibly be defended against it."

H. Selwyn Smith, the Commonwealth's attorney who prosecuted the case against defendant, testified as follows:

"Q. Did you, at any time, discuss the case with Mr. Thornton prior to the case being heard in this Court?

"A. I did.

"Q. Did you all go over the evidence that you had to be presented against Mr. Ellyson?

"A. Yes, sir, I did.

"Q. Did you, in your own opinion, feel that Mr. Thornton did everything he could for Mr. Ellyson under the circumstances?

"A. In my own opinion I feel that he did, yes, sir. I opened my complete file up to him, giving him the benefit of every minute item of evidence I had, and on the basis of that, and my knowledge of Mr. Thornton's ability, I believe that he did."

It is well settled that a person serving a sentence in the penitentiary who seeks his release by *habeas corpus* on the grounds of ineffective assistance of counsel has the burden of proving the charge made by a preponderance of the evidence. Further, "effective" assistance of counsel means something other than successful assistance

and, usually, a person is deprived of effective assistance of counsel only in those extreme instances where the representation is so clearly inadequate as to make a farce of the trial. In order for one to be deprived of effective assistance, there must be some showing of prejudice to the defendant before a conviction will be overturned. See *Peyton* v. *Fields*, 207 Va. 40, 147 S.E. 2d 762; *Yates* v. *Peyton*, 207 Va. 91, 147 S.E. 2d 767, and cases there cited.

In the case at bar, there has been no showing that defendant's rights were in anyway prejudiced by the amount of time his court-appointed attorney spent with him or by the failure of counsel to perform any act. Defendant admitted to his attorney before trial that he was guilty of the crime, and after the trial the probation officer stated in his report, which is incorporated in the record before us, that he "admits his guilt to the offense". Thornton testified that he read the report and "went over it" with defendant at the hearing on the presentence report which was about a month after the trial itself; that defendant did not at any time indicate a desire to withdraw his plea of guilty or to appeal from the judgment of conviction. Moreover, there has been no suggestion by defendant that he had a defense to the charge upon which he was convicted. Certainly, we cannot say that the representation provided defendant was so transparently inadequate as to make a farce of the trial.

There is no requirement that counsel fabricate a defense where in fact none exists. *Peyton* v. *Fields*, *supra*, 207 Va. at p. 45. Furthermore, "[t]here can be no predetermination of the length of time needed by court-appointed counsel to prepare for trial since the requirements will vary greatly and what may be a reasonable time in one case could be quite unreasonable in another." *United States* v. *Ray*, 351 F. 2d 554, 555; *Dawson* v. *Peyton*, 246 F. Supp. 444, 445.

The record shows that the court below, in holding that defendant was not afforded effective representation, was influenced by our decision in *Whitley* v. *Cunningham*, 205 Va. 251, 135 S.E. 2d 823, and defendant relies heavily upon it here in support of his position. But that case is distinguishable from the case at bar in that the facts are not similar. Among other differences, in *Whitley*, the accused was charged with multiple felonies and there were possible defenses which could have been raised, while in the instant case there was only one charge and there has been no showing of any possible defense to it.

Defendant also relies upon *Burley* v. *Peyton*, 206 Va. 546, 145 S.E. 2d 175. Suffice it to say that the facts in that case are vastly different from those in the present case. Hence, *Burley* is not controlling here.

We find that defendant failed to establish by proof that he was ineffectively represented by counsel and that the trial court erred in awarding him a writ of *habeas corpus* on this ground.

We turn now to a consideration of defendant's assignments of cross-error.

In his first assignment, defendant alleges that the trial court erred in failing to hold that his sentence for robbery was a nullity on the ground that he was not represented by counsel at the preliminary hearing when the County Court accepted his plea of guilty and he waived a preliminary hearing without having advised him of his right to counsel. He argues that the failure to advise him of his right to counsel before the hearing violated his constitutional rights. We find this contention to be without substance.

In Virginia the preliminary hearing is procedural and not jurisdictional. *Snyder* v. *Commonwealth*, 202 Va. 1009, 1014, 121 S.E. 2d 452, 456.

In *Vess* v. *Peyton*, 352 F. 2d 325, petitioner alleged in his petition for a writ of *habeas corpus* that his conviction for first degree murder was a nullity because he did not have the assistance of counsel at the preliminary hearing; that the hearing was a critical stage of the proceedings, and that he did not have adequate representation at the trial itself. In affirming the District Court's decision dismissing the petition, the court stated in part:

"* * * [T]he preliminary hearing in Virginia is not a critical stage of the proceedings, and Vess was not prejudiced by the absence of counsel at this point since no substantive rights were forfeited. *Ward* v. *Peyton*, 349 F. 2d 359 (4 Cir. 1965); *DeToro* v. *Pepersack*, 332 F. 2d 341 (4 Cir. 1964); see *Snyder* v. *Commonwealth*, 202 Va. 1009, 121 S.E. 2d 452 (1961)." 352 F. 2d at p. 326.

As was said in *Timmons* v. *Peyton*, 240 F. Supp. 749, 754, "Virginia * * * does not permit the acceptance of either a plea of guilty or not guilty on a felony charge at a preliminary hearing". However, assuming that a plea of guilty were entered, such a plea would not be admissible as evidence at the trial itself. See *Hammer* v. *Commonwealth*, 207 Va. 135, at p. 149, 148 S.E. 2d 878, at p. 886. (footnote 8)

A preliminary hearing is not a trial in its ordinary sense. The primary purpose of such a hearing "is to ascertain whether there is reasonable ground to believe that a crime has been committed and the person charged is the one who has committed it. * * *." *Webb* v. *Commonwealth*, 204 Va. 24, 31, 129 S.E. 2d 22, 28.

Here, defendant waived a preliminary hearing in writing as he had a right to do under Code, § 19.1-163.1. Whether or not the County Court accepted a plea of guilty, which he says was done, is immaterial. Certainly, there has been no showing that anything that occurred in the County Court was used against him in the Circuit Court at the trial, or that any of his substantive rights were forfeited by not having the assistance of counsel before he was brought before the Circuit Court where counsel was appointed.

In his second assignment, defendant says the court erred in failing to hold that his sentence for robbery was null and void on the additional ground that the warrant under which he was tried and convicted was fatally defective "in that it did not allege ownership of the goods taken and did not conclude 'against the peace and dignity of the Commonwealth' ".

The pertinent parts of the warrant read as follows:

"* * * [T]hat on the 20 day of July, 1962, in the County aforesaid, Jessie Junior Ellyson did unlawfully feloniously, and with force, holdup and rob Gordon F. Mayhugh of U. S. Currency in excess of $100.00 * * *".

Virginia has no statute defining robbery. Code, § 18.1-91 merely fixes the punishment for the offense. To constitute the crime of robbery there must exist all of the essential elements at common law. In *Mason* v. *Commonwealth*, 200 Va. 253, 254, 105 S.E. 2d 149, 150, we defined robbery at common law as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation."

"It is well settled in Virginia that the writ of habeas corpus does not lie as a substitute for an appeal or writ of error. The underlying question in habeas corpus proceedings is directed to whether an indictment is so fatally defective and void that the court in which the petitioner was convicted did not have jurisdiction of the person and crime charged and if the court had jurisdiction to render the particular judgment. If the court had jurisdiction of the person and the crime charged, and if the punishment imposed is of the character prescribed by law, a writ of habeas corpus does not lie to release the prisoner

from custody for mere irregularities or insufficiency of an indictment no matter how vulnerable to direct attack on motion to quash." (Citing cases). *Council* v. *Smyth*, 201 Va. 135, 139, 109 S.E. 2d 116, 119, 120.

Section 106 of the Constitution of Virginia requires that "indictments" shall conclude with the phrase "against the peace and dignity of the Commonwealth", but there is no such requirement that a warrant shall conclude with these words. The fact that the warrant failed to specify the ownership of the property taken did not render the warrant void. The terms "holdup" and "rob" import an intent to steal and were sufficiently clear to inform the defendant of the charge against him. Various courts have interpreted the meaning of these words and have held them to be sufficient to come within the common law definition of robbery. See *McLean* v. *Maxwell*, 2 Ohio St. 2d 226, 230, 208 N.E. 2d 139, 140; *State* v. *Spratt*, 265 N.C. 524, 144 S.E. 2d 569, 572; *State* v. *Domanski*, 57 R.I. 500, 503, 190 A. 854, 856; *Acker* v. *Commonwealth*, 94 Pa. 284, 286; *State* v. *Anderson*, 53 Ore. 479, 486, 101 P. 198, 201.

While the warrant was not expertly drawn and we do not approve of the exact form in which the charge of robbery was stated, it is evident from a fair reading of the warrant that its purpose was to charge defendant with robbery. The warrant was not fatally defective and void. The trial court had jurisdiction of the person and of the crime charged and the punishment imposed was within the limits prescribed by law (§ 18.1-91). Under these circumstances *habeas corpus* does not lie. Non-fatal defects in a warrant, such as claimed by defendant, may be reached by motion to quash or by writ of error.

Finally, defendant contends that appellant has failed to comply with Rule 5:1, § 4, of Rules of Court, which reads in part: "No appeal shall be allowed unless, prior to the expiration of sixty days after final judgment, counsel files with the clerk notice of appeal and assignments of error. * * *." Defendant claims that appellant's assignments of error were not filed within the sixty day period and, therefore, we should not entertain this appeal. We find this contention to be without merit.

The record shows that the trial judge pronounced his judgment on January 22, 1965, and signed the order setting forth his judgment on March 8, 1965. Appellant filed his assignments of error on April 6, 1965, well within the time allowed. Defendant has failed to dis-

tinguish between pronouncement or rendition of a ruling and entry of judgment thereon. Time, for the purposes of appeal under Rule 5:1, § 4, begins to run from the date final judgment is entered, which event occurred in the present case on March 8, 1965. See *McDowell* v. *Dye*, 193 Va. 390, 393, 394, 69 S.E. 2d 459, 462, 463.

For the reasons stated, the judgment appealed from is reversed, the petition for a writ of *habeas corpus ad subjiciendum* dismissed, and defendant remanded to the custody of C. C. Peyton, Superintendent of the Virginia State Penitentiary.

*Reversed.*