## Staunton

WALTER DONALD GADDIS v. C. C. PEYTON, SUPERINTENDENT OF THE
VIRGINIA STATE PENITENTIARY.

September 9, 1966.

Record No. 6231.

Present, All the Justices.

*Henry D. Kashouty* for the plaintiff in error. Submitted on
brief.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button,
Attorney General; James Parker Jones, Assistant Attorney General,*
on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of the City
of Hampton, wherein a petition for a writ of *habeas corpus ad sub-*

*jiciendum* filed by Walter Donald Gaddis, sometimes hereinafter referred to as petitioner, against C. C. Peyton, Superintendent of the Virginia State Penitentiary, sometimes hereinafter referred to as respondent, was denied and dismissed.

Petitioner was detained by respondent pursuant to a judgment order of the Circuit Court of the City of Hampton entered August 16, 1961, whereby he was sentenced to serve a term of fifteen years in the State penitentiary upon a conviction of robbery. On September 13, 1963, he filed in this court a petition for a writ of *habeas corpus*. We awarded him a writ returnable to the Circuit Court of the City of Hampton for a hearing and a determination of the matters set forth in his petition. The petition alleged several grounds for relief, but it was subsequently amended by court-appointed counsel to include an allegation that petitioner had been convicted of robbery "on the basis of the introduction of unconstitutionally obtained evidence in violation of Section 1, of the Fourteenth Amendment of the Constitution of the United States, in that said evidence was obtained without a valid search warrant and by means of an unreasonable search and seizure." A plenary hearing was had, and the petition was later dismissed. We granted petitioner a writ of error.

The record discloses that at approximately 1:00 a.m. on July 13, 1961, a robbery occurred at the Sans Souci Motel in Hampton. The police were notified, and several officers, one of whom was Sergeant J. C. Hamrick, went to the scene. Hamrick interviewed the night manager, learned what property had been taken, and obtained a description of the "subject". A search was then made of the immediate area of the motel "to see if there was any physical evidence of the crime", but nothing was found.

As a result of a prior robbery in Hampton, the police had received information that Bobby Murray was "one of the ones that was going to pull an armed robbery * * * in the forseeable future" in Hampton. The police were familiar with Murray's *modus operandi*, and they were of opinion that it corresponded with that utilized at the Sans Souci Motel robbery. They knew that Murray lived in an apartment at 204 Herbert avenue, and sometime on the night of July 12, i.e., before the Sans Souci robbery occurred, they secured a search warrant for the apartment. They intended to go to the apartment "on this night anyhow", but because of the information they had received and the fact that the *modus operandi*

of the two robberies corresponded, they went from the Sans Souci Motel to the apartment.

Sergeant Hamrick testified that he went to 204 Herbert avenue and knocked on the door. Gaddis, the petitioner, answered the door and was alone in the front room. Hamrick "didn't know he was going to be there." Hamrick asked for Bobby Murray, went into "the bedroom in the back", and found Murray lying awake in bed. He informed Murray that he had a search warrant. He observed a paper bag lying on the bed, picked it up, and found a .25 caliber automatic pistol inside. Murray and Gaddis were placed under arrest and taken to police headquarters. Gaddis was charged with robbery.

Gaddis testified that the apartment "belonged" to Murray's brother-in-law; that he had been there twice previously on the "same day" that the apartment was searched; that he had been drinking "and went to lay down", and that he thought he was alone at the time the officers arrived. He said:

"I was laying on the couch and Mr. Hamrick come in, shook me, and told me he got a search warrant, and asked me was I there alone, and I told him, yes, that I was."

Gaddis denied that he knew that Murray was in the back bedroom. He testified that Sergeant Hamrick exhibited a paper to him but that he did not read it. Gaddis was asked what the officers did while they were in the apartment. He replied:

"Mr. Hamrick, he went to the bedroom and this other detective stayed where I was at, and another detective started searching the house; and Mr. Hamrick come back out and talked to another detective a little bit, and he come back and asked me, 'I thought you said you were by yourself.' I told him I was, and then he told me to go in the kitchen and the detective searched the kitchen and come back in the living room and pulled the television out and found a cash box and went around picking up some clothes which I had never seen before."

Gaddis further stated that the police remained in the apartment for ten to fifteen minutes before they took him down to headquarters and that when they left the apartment they took with them "[s]ome pants, gloves, women's stockings, and shirts."

Sergeant Hamrick testified positively that he had a search warrant in his possession when he searched the apartment, but he could not recall what he did with the warrant after the search was made.

He also could not remember from whom the warrant was obtained, but he was "pretty sure" it was secured "by somebody else on information that they had previous to me coming to work." His testimony was corroborated by that of Sergeant L. M. Tatum, a fellow officer, who had accompanied him during his search of the apartment. Tatum stated that they had a search warrant, but he could not remember from whom it was obtained and did not know what became of it.

At the *habeas corpus* hearing it was stipulated by counsel for both parties that "the evidence seized on July 13, 1961, at 204 Herbert Avenue, Hampton, Virginia, was admitted into evidence at the trial of this petitioner on August 16, 1961"; that "said seized evidence was used by the Commonwealth as the basis upon which a penitentiary sentence was imposed upon the petitioner", and that "the files of this Court [Circuit Court of the City of Hampton] do not contain a search warrant, nor do they contain an affidavit which had been filed requesting a search warrant."

Petitioner contends that the search of the apartment was unlawful because "it was conducted without a search warrant not as an incident to arrest; and the record shows no exceptional circumstances justifying such a search." He asserts that the warrant itself and the affidavit therefor could not be produced at the *habeas corpus* hearing; that "there was a total lack of evidence as to what the facts were in connection with the search warrant and * * * the sequence of events leading up to" his arrest, and that "the final inevitable and necessary conclusion to be drawn from the officers' testimony" is that the officers had no warrant at all.

C. C. Peyton, respondent, on the other hand, says that the evidence conclusively established that there was in fact a search warrant; that petitioner failed to carry his burden of proof of showing that no warrant existed, and that petitioner had no standing to complain of the search and seizure.

We are required to follow the federal rule that evidence obtained by a search and seizure in violation of the Fourth Amendment to the Constitution of the United States is inadmissible in a criminal trial. *Hawley* v. *Commonwealth*, 206 Va. 479, 481, 144 S.E. 2d 314 (citing *Mapp* v. *Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.ed. 2d 1081 and *Ker* v. *California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.ed. 2d 726.) But it is well settled that in a *habeas corpus* proceeding the petitioner has the burden of proving that there has been

a denial of his constitutional rights. He must convince the trier of the facts of the truth of his assertions by a preponderance of the evidence. See *Peyton* v. *Fields*, 207 Va. 40, 44, 147 S.E. 2d 762; 9 M.J., Habeas Corpus, § 8.

We are of opinion that the evidence adduced in the case at bar fell far short of establishing that the officers had no search warrant for the apartment at 204 Herbert avenue. It is true that the officers could not recall what disposition was made of the warrant after the search and that it was stipulated by counsel that the files of the Circuit Court of the City of Hampton did not contain the warrant itself or the affidavit therefor, but these circumstances, standing alone, were not sufficient to show that the warrant never existed.

Sergeant Hamrick stated positively that he had a search warrant in his possession when he went to the apartment, and his statement was corroborated by Officer Tatum who accompanied him on the search. Hamrick also said that the warrant had been obtained on July 12, the day before the Sans Souci robbery occurred and that he informed Murray that he had the warrant shortly after he entered the apartment. Gaddis himself testified that Sergeant Hamrick told him that he had a search warrant and exhibited a paper to him but that he did not read it.

We hold that the uncontradicted testimony of the officers, as well as that of defendant himself, conclusively established that the officers had a search warrant in their possession when they searched the apartment. Hence, petitioner clearly failed to carry his burden of proving that there was no search warrant. He made no effort to show that the warrant was defective in any way, and we therefore conclude that it was proper in all respects.

In view of this finding, it is not necessary for us to discuss respondent's contention that Gaddis had no standing to object to the search and seizure, other than to say that Gaddis failed to prove that he had such standing.

Our conclusion is that petitioner failed to prove his allegation that he was convicted of robbery on the basis of evidence procured by means of unreasonable search and seizure. Thus, the trial court did not err in dismissing the petition for a writ of *habeas corpus*, and the judgment order appealed from is

*Affirmed.*