## Richmond

A. E. SLAYTON, JR., SUPERINTENDENT OF THE VIRGINIA STATE
PENITENTIARY v. CHARLES JACK WEINBERGER.

March 5, 1973.

Record No. 8043.

Present, All the Justices.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for plaintiff in error.*

*Leonard A. Paris (D. Wayne O'Bryan; White, Cabell, Paris & Lowenstein, on brief), for defendant in error.*

HARMAN, J., delivered the opinion of the court.

The trial court granted a writ of habeas corpus upon the petition of Charles Jack Weinberger (Weinberger or defendant), thereby setting aside an order of the Circuit Court of Chesterfield County of October 3, 1969, convicting Weinberger of performing an illegal abortion and sentencing him to confinement in the penitentiary for a term of ten years. We awarded a writ of error.

The trial judge, as required by Code § 8-596 (b) (5), made the following findings of fact and conclusions of law as his basis for finding ineffective representation and awarding the writ:

"I find that the attorneys representing Charles Jack Weinberger did not in fact interview available witnesses to them that were material to this case.

"I further find that one of his lawyers never appeared at any hearing at the trial of this man. It appears from and I find as a fact, that some sort of collusion was manufactured trying to reflect to the jury that Weinberger was a police official or working for the police as an undercover agent, when there was no basis for this foundation. I further find as a fact, that this foundation was manufactured with the consent and knowledge of the attorneys for the petitioner, and, in fact, the witnesses were paid for such testimony. Upon their appearance they readily conceded this was not a fact. Three of the four witnesses were never put on the stand.

"Based on these findings, I conclude that the petitioner was not granted a hearing for which he was represented by competent counsel or by counsel who had done their job and in a workman like manner."

■ Weinberger, having prevailed in the trial court, is entitled to have the evidence viewed in its most favorable light from his standpoint. And the judgment of the trial court should not be set aside unless it is plainly wrong or without evidence to support it. Code § 8-491; *Hern* v. *Cox*, 212 Va. 644, 186 S.E.2d 85 (1972).

■ Ordinarily one is deprived of effective assistance of counsel only in those extreme instances where the representation is so transparently inadequate as to make a farce of the trial. *Peyton* v. *Fields*, 207 Va. 40, 147 S.E.2d 762 (1966); *Root* v. *Cunningham*, 344 F.2d 1 (4th Cir. 1965).

A prisoner is entitled to effective representation, but the fact that something which might have been done was not done, in the absence of a showing of harmful consequence, is not enough to warrant

overturning convictions on petitions for habeas corpus. *Peyton* v. *Fields, supra; Horne* v. *Peyton,* 356 F.2d 631 (4th Cir. 1966), *cert. denied* 385 U.S. 863 (1966).

In order for one to be entitled to relief for lack of effective assistance, there must be some showing of prejudice to the defendant before the conviction will be overturned. *Peyton* v. *Ellyson,* 207 Va. 423, 150 S.E.2d 104 (1966).

The burden of establishing ineffective representation rests upon the petitioner who alleges it. *Hoffler* v. *Peyton,* 207 Va. 302, 149 S.E.2d 893 (1966).

With these principles in mind, we must now determine whether the evidence before the trial court supports its findings of fact and justifies the relief granted.

The first finding by the trial court is that the defendant's attorneys failed to interview available witnesses. The record is devoid of evidence to support such a finding.

In the habeas corpus hearing the names of only three witnesses, Joan Bennett, Vincent Carbone and Joe Wienks, were mentioned.

The record discloses that Joan Bennett, a key witness for the prosecution, testified at the defendant's preliminary hearing and at his trial in the circuit court. Joe R. Davila, Jr. (Davila), who represented Weinberger at trial, also represented him at the preliminary hearing. He heard Joan Bennett testify at the preliminary hearing and had an opportunity to cross-examine her. In view of this Davila concluded, and we agree, that a further interview with Joan Bennett was unnecessary.

Vincent Carbone (Carbone) was well known to Davila and was interviewed by him prior to the criminal trial. Carbone was not called as a witness at the criminal trial, and he did not testify at the habeas corpus hearing.

Joe Wienks (Wienks) was interviewed by Clinton B. Cory (Cory), an attorney whose representation of Weinberger will be more fully discussed later. Wienks did not testify at either the criminal trial or the habeas hearing.

It appears, therefore, that the record contradicts rather than supports the court's first finding of fact.

The next finding of the trial court is that one of Weinberger's lawyers, Cory, never appeared at the defendant's trial. Testimony introduced by the defendant establishes that defendant, after his arrest, contacted Cory by telephone for the purpose of employing Cory to represent him. Cory agreed to represent defendant with

the understanding that Davila would "actually try the case" and that Cory "would perform the investigative and 'background' work." This is what the defendant bargained for and this is the representation which he received. We see no possible prejudice to the defendant, and the record shows none, resulting from this course of action.

The trial court's further finding, that there was a conspiracy to manufacture evidence, is likewise not supported by the record.

Defendant testified at his criminal trial that he did not perform the criminal abortion. He told the jury that he was present at the apartment where the abortion was performed as a police informer, his purpose being to obtain information about illegal drug activity being conducted there by Carbone and Wienks.

Prior to his criminal trial the defendant had advised Davila that four members of the vice squad of the Richmond Police Department could vouch for this undercover activity.

Davila summonsed the four officers and agreed, prior to trial, to reimburse them for the time they lost and the expense they incurred in attending the trial in the adjoining county.

Davila was not questioned by the defendant at the habeas hearing about the extent of his interviews with these officers prior to the criminal trial.

At the criminal trial one of these officers, A. E. Carroll, was called as a witness for the defense. When he was interrogated, out of the presence of the jury, he disclosed that Weinberger had acted as an unpaid police informer about drug activity at the apartment development where the illegal abortion was performed. However, Carroll testified, upon examination by the court, that his initial contact with Weinberger did not occur until February, 1969, approximately three months after the abortion. The trial court, after hearing this testimony, held this evidence irrelevant to explain Weinberger's presence at the apartment in November. Carroll was not recalled before the jury nor were the other police officers called to testify. Each of the officers summonsed was paid $40.00 in reimbursement for his time and expense in attending court.

This evidence, however, did not justify or support the trial court's conclusion that the attorney representing Weinberger "manufactured evidence" or "colluded" to present false evidence. The opposite conclusion would appear to be more justified by the facts.

The trial court apparently reached this conclusion because the Richmond police officers were reimbursed, in excess of the statutory

fees, for their time and expense in attending the criminal trial. To do so the trial court had to ignore the well-known fact that agreements to pay witnesses for lost time and expenses incurred, in excess of the statutory fees, are not unusual, extraordinary or improper. See A.B.A. Code of Professional Responsibility E C 7-28 (1971). Such agreements are not to be encouraged and, for that reason, they are not legally enforceable. While the existence of such an agreement may be shown as affecting the weight and credibility of the witness' testimony, the existence of an agreement is not ordinarily sufficient grounds to set aside a verdict and award a new trial. *See Smith* v. *Allen,* 212 F. Supp. 713 (E.D.Va. 1962).

The defendant, in his brief and at oral argument, points out other evidence of alleged misconduct on the part of Cory which he says establishes ineffective representation. This testimony of the defendant was in conflict with and was directly contradicted by several other witnesses. The trial court's failure to mention this evidence in its findings was not called to the court's attention at the time the findings of fact were dictated into the record on the last day of the hearing. Rule 5:7. In any event, this argument of the defendant is without merit.

We find, therefore, that the trial court erred in granting the writ. The order appealed from is reversed, the petition for a writ of habeas corpus is dismissed, and the defendant is remanded to custody.

*Reversed and final judgment.*