IN RE FREDERICK W. WAKEFIELD.

January Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed February 21, 1935.

*Lawrence C. Jones*, Attorney General for the State.

*Frederick W. Wakefield per se.*

THOMPSON, J.    This is a presentment brought by the Attorney General against the respondent, Frederick W. Wakefield, charging him with unprofessional and improper conduct in his office of State's attorney.    The respondent is an attorney of this Court, and, at all times material here, he was the duly elected

and qualified State's attorney within and for the county of Chittenden.

At all times material, Eugene Gosselin operated a drug store in the city of Burlington. He had a second-class license issued to him on July 12, 1934, and a druggist's permit, both issued under the provisions of No. 1 of the Acts of the Special Session of the Legislature of April, 1934, which regulates the sale of intoxicating beverages, and to which we hereafter refer as the "liquor act."

There are two counts in the presentment. The first count charges the respondent with improper and unethical conduct as State's attorney by appearing as attorney for Eugene Gosselin at a hearing held before the liquor control board on October 19, 1934, at which hearing Gosselin had been duly notified to appear to show cause why his second-class license should not be revoked.

The respondent admits that the allegations in the presentment are true, so we treat all allegations of fact in the presentment as facts which have been duly proved.

The respondent has filed an answer to the charges against him, which is more in the nature of a plea of confession and avoidance than anything else. That there may be a clear understanding of the charge against the respondent and his defense thereto, we refer, at this time, to material provisions of the liquor act and of some of the regulations made and promulgated by the liquor control board.

The State has a monopoly of the sale of intoxicating beverages within its borders which are sold at retail for consumption through State liquor agencies which are established for that purpose and by persons licensed to sell the same. The liquor control board, which consists of three persons, is, by section 12 of the act, given the supervision and management of the sale of spirituous liquors in accord with the provisions of the act, "and through the liquor administrator shall see that the laws relating to sale of malt and vinous beverages and spirituous liquors are enforced." It is given broad powers in the performance of its duties. Among the powers granted to it is the power to "make and promulgate regulations necessary for the execution of its powers and duties and of the powers and duties of all persons under its supervision and control." It is also given the power to grant licenses and permits for the sale of intoxicating beverages, and to suspend or revoke the same but "no

revocation shall be made until the permittee or licensee shall be notified and be given a hearing before the liquor control board unless such permittee or licensee shall have been convicted by a court of competent jurisdiction of violating the provisions of this act."

The liquor administrator, who is the administrative officer of the liquor control board in supervising and managing the sale of intoxicating beverages, is authorized by section 14 of the act to make certain regulations subject to the approval of the board.

Section 3 of the act provides that a person shall not furnish or sell or expose or keep with intent to sell any malt or vinous beverages, spirits, or alcohol except as authorized by the act.

A second-class license authorizes the licensee to sell malt and vinous beverages only of the alcoholic content prescribed by the act, to the public for consumption off the premises for which the license is granted. He has no authority under such license to sell alcohol or spirituous liquors.

█ Section 71 of the act provides: "A person who wilfully violates a provision of this act for which other penalty is not prescribed or who wilfully violates a provision of the regulations of the liquor control board shall be imprisoned not more than three months nor less than one month or fined not more than two hundred dollars nor less than fifty dollars or both." The word "wilful" or "wilfully," as used in the statute, means intentionally. *State* v. *Burlington Drug Co.*, 84 Vt. 243, 252, 78 Atl. 882; *First National Bank of Enosburg Falls* v. *Bamforth*, 90 Vt. 75, 80, 96 Atl. 600; *State* v. *Williams*, 94 Vt. 423, 430, 111 Atl. 701.

On September 28, 1934, certain regulations, made and promulgated by the liquor control board, and by the liquor administrator approved by the liquor control board to and including September 28, 1934, under the provisions of the liquor act, were issued by the board. A copy of the regulations was sent to the respondent as State's attorney of Chittenden County.

Regulation No. 23 provides, in part, that no person holding a second-class license can sell or furnish any wines known as Port or Sherry. Regulation No. 28 provides, in part, that no person holding a second-class license shall possess or allow to be possessed on the premises described in his license any alcohol or spirituous liquors.

The respondent admits in his answer that he appeared as attorney for Gosselin at a hearing before the liquor control board held on October 19, 1934, to which Gosselin had been duly notified to appear to show cause why his second-class license should not be revoked, but he says that his appearance before the board was made under the mistaken opinion that it was justified, and that no harm has resulted from his error of judgment.

The respondent, in explanation of his conduct in appearing for Gosselin before the liquor control board, says, in substance, that the provisions of regulation No. 28 had not come to his attention at the time of his appearance; that a copy of the regulations had been received at his office a short time before his appearance while he was busy as State's attorney in county court; that at that time he knew of a municipal judge in another county appearing before the board in a similar matter, and it did not occur to him that in so appearing he was acting in any violation of his duties as State's attorney; that, not having knowledge of the provisions of regulation No. 28, he was not of the opinion that Gosselin should be, or could be successfully, prosecuted for the violation of any law; that after he learned of the provisions of regulation No. 28, and upon complaint of the liquor administrator, he prosecuted Gosselin under regulation No. 28; that Gosselin appeared personally and by counsel, and pleaded guilty.

The respondent says: "Therefore, that in the Gosselin matter he has performed his duty as State's attorney and that the transgression in appearing before the liquor board was not wilful but inadvertent."

We cannot agree with the respondent that his act in appearing as attorney for Gosselin before the liquor control board was not wilful but inadvertent. That his act was wilful in that appearing before the board he did just what he intended to do appears clearly from the record. Nor can he rely upon his ignorance of the regulations made and promulgated by the liquor control board as a justification for such appearance. The regulations having been made under the authority of, and in conformity with, the provisions of the liquor act, they have the authority of law, and the wilful violation of any regulation being punishable by fine or imprisonment or both, the regulations had the same effect as criminal statutes. Considering the nature of the regulations and the circumstances under which the re-

spondent received a copy of them, he was chargeable with knowledge of their provisions before he appeared for Gosselin before the board. But, even if this were not so, it appears from the record that before he appeared for Gosselin before the liquor control board he had information of facts which, if he had had any conception of his duty as State's attorney and an officer of this Court, would have convinced him that such an appearance would be a prostitution of his office and a gross violation of the ethics of his profession.

It appears from the record that on October 10, 1934, Gerald R. Petrie, an inspector appointed by the liquor control board under the authority of the liquor act, visited Gosselin's drug store in his official capacity for the purpose of making an inspection of the premises; that during the inspection he found one pint of gin and five pints of alcohol; that Gosselin told him that such liquor was purchased prior to the enactment of the liquor act and was all the intoxicating liquor he had on the premises; that on further inspection Petrie found a five-gallon tin can, which bore no tax stamp, about half full of alcohol, and a gallon tin can half full of alcohol in the basement of the drug store; that on further investigation Petrie found 8 pints of gin, 28 pints of whiskey, 4 quarts of Sherry wine and 4 quarts of Port wine in the cupboards behind the show case in the drug store. On October 11, 1934, Gosselin was duly notified by the liquor control board to appear before it at Montpelier on October 19, 1934, to show cause why his second-class license should not be revoked. On October 12, Petrie, at the request of the respondent, went to the office of the latter to talk with him about the Gosselin matter. The respondent asked Petrie: "What can be done about Eugene Gosselin?" and Petrie replied: "I do not know, but it is quite evident that he has possessed liquor in violation of his license." The respondent than said: "Well, I don't know much about how the board acts but Gene called me to represent him before the board and I thought I might get a dollar out of it. Have you made out your report of him yet?" Petrie replied: "Yes, I have, made it out the night of the same day I made the inspection there." The respondent said: "I did not think you would have made your report so soon." The respondent then asked Petrie what there was against Gosselin, and on being told by Petrie of the result of his inspection, asked him if there was any way Gosselin could retain his license be-

cause he was a cripple and had to make a living. Petrie then told the respondent that there was a case against Gosselin for keeping intoxicating liquor with intent to sell which would be reported to him as State's attorney for prosecution. Nor is that all. It appears from the transcript of the hearing before the board, which is made a part of the record, that at the very beginning of the hearing the following questions were asked the respondent by Mr. Martin, the liquor administrator, and answers received: "Q. You appear Mr. Wakefield as Mr. Gosselin's attorney? A. Yes, Mr. Martin, I do. Q. And you are State's attorney of Chittenden county at the present time? A. Yes, sir. Q. You are State's attorney and also acting for Mr. Gosselin? A. Yes." The chairman of the board then said: "That's rather a queer predicament." Later, the chairman said: "Don't you think you lay yourself open to criticism by coming here, Mr. Wakefield?" and the respondent replied: "I'm going to get out of office in a few months. I am not apologizing for being here. I am entitled to practice law and that's what I'm doing when it doesn't conflict with my State's attorney job."

The respondent took a peculiar position at the hearing before the board. He was defiant, insolent, and impertinent, particularly toward the liquor administrator, for which he was rebuked by the chairman. The position he took at the hearing is well shown by the following statement which he made to the board: "As I say, judging this case from the viewpoint of a criminal case, which it ought to be shown to that degree for prosecuting, the State has failed to make a case. The mere fact that you have liquor in your store couldn't be used against you, you have to show sale and I maintain the same here. If you gentlemen shouldn't agree with me, if there is any leniency I wish you would show it in this case. A man in his condition ought to be shown leniency. This is not a case of illegal sale; you could never get to a jury with your case. He is entitled to possess liquor, you couldn't try him for possession." And, again: "This man can't be held for the same degree of responsibility about his premises as a well man could; and, even as I say, if you gentlemen can't see it the way I do, I wish you could see your way clear to be lenient with him and give him one more chance, and if you gentlemen will tell us what you think he ought to do, it will be appreciated."

Near the close of the hearing the liquor administrator said: "Now Mr. Wakefield, I give you a typewritten copy of our inspector's report that states all the facts, and I make complaint to you as State's attorney of Chittenden county to prosecute Mr. Gosselin under section 33 of the liquor law and also for violation of regulation No. 28 of the liquor control board. To this the respondent replied: "I will give you my opinion on that." To this, the liquor administrator said: "I don't want your opinion; I want you to comply with the law."

Section 33 of the liquor act reads: "The liquor administrator or the control commissioners shall make complaint to the state's attorney or town grand juror of any unlawful furnishing, selling or keeping for sale of alcohol, spirituous liquor, and/or malt or vinous beverages, and furnish the evidence thereof to such state's attorney or town grand juror, who shall prosecute for such violation."

Although the respondent was furnished with the evidence of the alcohol and spirituous liquor found by Petrie on the premises of Gosselin and the circumstances under which they were kept there, which we think were sufficient to have warranted the prosecution of Gosselin for unlawfully keeping alcohol and spirituous liquor for sale, it does not appear that the respondent prosecuted him for that offense as provided by section 33 of the Act, or that he investigated the complaint of the liquor administrator as provided by section 62 of the Act. In fact, the inference to be drawn from the record is that he did not prosecute or investigate. It is true, as the respondent sets forth in his answer, that he prosecuted Gosselin for violating the provisions of regulation No. 28, but he admits that such prosecution was not instituted until after this presentation was brought.

We have gone into considerable detail in narrating the facts of the employment of the respondent by Gosselin to represent him as attorney at the hearing before the liquor control board and of the appearance and conduct of the respondent at the hearing before that board, as they are material in determining whether the conduct of the respondent in accepting such employment and appearing before the board for Gosselin was due to an honest and innocent mistake of judgment, in which event we think a reprimand is sufficient, or whether his conduct in those respects was of such a character that a reprimand is not sufficient.

■ There is no law ·in this State that prohibits a State's attorney, when elected, from continuing in the private practice of law during his term of office, and it is the general custom of State's attorneys to continue ·in their private practice. of law, but it seems hardly necessary to say that such private practice must not conflict in any way with the duties of a State's attorney as public prosecutor, as he cannot represent both the State and a respondent charged with committing a criminal offense.

■ It is a matter of common knowledge, of which we take judicial notice, that it has been the practice of some State's attorneys to appear in another county in the State and defend a respondent charged with committing a crime in such other county, or to appear in proceedings in which the State was an opposing party or had adverse interests. Such practice is unethical and improper and it should not be followed or countenanced. A State's attorney in this State is not merely a prosecuting officer in the county in which he is elected. He is also an officer of the State, in the general matter of the enforcement of the criminal law. It is the State, and not the county, that pays his salary and official expenses.

Such unethical conduct is covered fully by section 32 of the code of professional ethics adopted by the Bar Association of this State, which provides that an attorney "must decline to appear in any cause where his obligations or relation to the opposite parties will hinder or seriously embarrass the full and fearless discharge of all his duties," and by section 25 of the Code, which reads: "An attorney can never represent conflicting interests in the same suit or transaction. An attorney represents conflicting interests, within the meaning of this rule, when it is his duty, in behalf of one of his clients, to contend for that which duty to other clients in the transaction requires him to oppose." Canon 6 of the Canons of Professional Ethics adopted by the American Bar Association is, in substance, the same as section 25 of our code.

There is an opinion by the American Bar Association Committee on Professional Conduct in the February, 1935, issue of the *American Bar Association Journal*, p. ·116, which is pertinent to the principles involved in this case.

The committee was asked if a county attorney whose duty it is to prosecute crimes committed within the county, but who is permitted by statute to practice law while in office, may properly

undertake to obtain a pardon or parole of one convicted in another county, in whose conviction he took no part, and he had no previous knowledge of the facts of the case. The opinion of the committee, holding that such employment would be professionally improper, and which we fully approve, is as follows:

"A county attorney is attorney for the State in the general matter of the enforcement of the criminal law, although the sphere of his activity is limited to a particular county. It would be manifestly improper for him to represent one whose conviction he had brought about to obtain a pardon or parole. In so doing he would be nullifying, in the hope of personal gain, the results of the performance of his duty as attorney for the State. It is not different in principle when he seeks to nullify the results of the performance of duty by another for the State with reference to the same general subject matter. The statutory permission to practice law while in office must have been intended to be limited to matters in which the State is not a party. For one county attorney to engage in undoing the work of another would present an appearance of confusion and pulling at cross purposes that would tend to diminish the public confidence in and respect for law enforcement. The application for a pardon or parole appears to be a proceeding in which the State is interested adversely to the convict. The convict's representation should be left to those who are not attorneys for the State."

The liquor control board, when passing upon the question whether the license of a licensee shall be revoked for the violation of a provision of the liquor act or a regulation made by the liquor board, sits as a tribunal with a judicial function to perform. It was the duty of the respondent as State's attorney of Chittenden County and as attorney for the State in the general matter of the enforcement of the criminal law to aid the liquor control board in enforcing the provisions of the liquor act in Chittenden County, and not to thwart it in the performance

of its duties. That he, in the hope of personal gain, grossly violated his duty as State's attorney and as an attorney of this Court in appearing for Gosselin before the liquor control board appears clearly from the record.

He was charged with the duty of prosecuting violations of the liquor act in Chittenden County on proper complaint. When Petrie told the respondent on October 12 that there was a case against Gosselin for keeping intoxicating liquor with intent to sell which would be reported to him as State's attorney for prosecution, that was sufficient notice to him that it would be improper for him to act as attorney for Gosselin and that he should withdraw from the case. But, in the face of that warning and of two other warnings given at the hearing before the liquor control board, he failed to withdraw from the case and persisted in continuing to act as attorney for Gosselin. The record shows that his improper and unethical conduct was wilful and deliberate, and, in our judgment, it calls for more than a reprimand.

It appears from the second count of the presentment that on May 30, 1934, one Allie Brace was arrested and brought before the Burlington municipal court charged with having committed the crime of burglary in the nighttime. Brace was bound over to the next term of Chittenden county court, which convened on September 11, 1934, and, for want of bail, he was committed to jail. It was the duty of the respondent, as State's attorney, to have filed an information against Brace, at the September Term, 1934, and to have tried or otherwise disposed of the case against Brace, but he did nothing in the case. Brace remained in jail from May 20, 1934, until some time after November 1, 1934, the day on which the court adjourned *sine die,* when he was released from jail on bail.

It is evident that the respondent was negligent in not disposing of the case against Brace at the September Term of county court, and he is subject to a reprimand, but, as the attorney for Brace assumes some of the responsibility for not having the case disposed of at that term of court, we do not think it is necessary for this Court to take any action on the charge in the second count of the presentment.

*Judgment that said Frederick W. Wakefield is suspended from the office of attorney at law and from the office of solicitor*

*in chancery for the period of three months beginning February 20, 1935, and ending May 19, 1935.*