## Richmond

RUFUS STOKES V. C. C. PEYTON, SUPERINTENDENT OF THE VIRGINIA
PENITENTIARY.

April 25, 1966.

Record No. 6133.

Present, All the Justices.

C. *Willard Norwood*, for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an appeal by Rufus Stokes from an order of the Hustings Court of the City of Richmond entered on September 3, 1964, denying and dismissing his petition for a writ of *habeas corpus*, by which he sought release from a sentence of life imprisonment imposed on him by the same court [Huntley, J.] on October 24, 1963 for murder.

The only substantial questions presented are: (1) whether Stokes had the effective assistance of counsel when he was tried for murder; and (2) whether he was thereafter denied his right to appeal.

From the evidence, court records and exhibits, the following appears:

Stokes was indicted by a grand jury of the Hustings Court of Richmond on August 19, 1963, for the murder of Earl Prince. He employed Thomas C. Crouch, Jr., a member of the bar of the City of Richmond, to defend him. A trial was held on September 20, 1963. After being arraigned, Stokes pleaded not guilty, after advice of counsel. Thereupon, with the consent of the accused, given in person, on advice of counsel, and the concurrence of the court and the Attorney for the Commonwealth, the court proceeded to hear the case without a jury. After hearing the evidence and argument of counsel, Stokes was found guilty of murder in the first degree, and the case postponed to obtain a pre-sentence investigation and report from the Probation Department. That investigation was made, a report filed, and on October 24, 1963, Stokes was sentenced for the term of his natural life.

At the hearing in this *habeas corpus* proceeding, it was shown that Stokes is an indigent with little education. He had never completed

the fourth grade in the public school system, and was employed as a trash collector by the City of Richmond.

Crouch testified that on September 19, 1963, at the request of a niece of Stokes, he went to the Richmond city jail and conferred with Stokes about thirty minutes to an hour. In payment of counsel fees, Stokes assigned his funds in a credit union to Crouch. Stokes told Crouch that Earl Prince had provoked him into a fight; that he stabbed Prince in self-defense; and that there were three other persons present at the time. He gave the names of Rosetta Monroe and Cecelia Prince and their address, and the name of Irene Bostick, address unknown. Crouch promptly went to the home of the two persons first named, Rosetta Monroe and her daughter, Cecelia Prince, the latter being also the daughter of Earl Prince. The witnesses lived at the house where the killing occurred, where Prince also stayed. The house was frequently visited also by Stokes, calling upon Rosetta Monroe, with whom he apparently had an improper relationship. Rosetta and Cecelia told Crouch that Stokes had, without any provocation whatever, stabbed and killed Prince in cold blood, and that they were going to appear as witnesses for the Commonwealth. Taking notice of their attitude toward Stokes, Crouch warned them to be sure of the facts to which they testified, because of the seriousness of the charge against Stokes. Crouch then endeavored to locate Irene Bostick; but was unable to find her. Inasmuch as Stokes had told him that Irene's only knowledge of the case was the fact that she heard Prince call Stokes into the house, and that she knew nothing of the killing, Crouch returned to the jail, told Stokes that the outlook for him was not bright, and the reasons why he had reached that conclusion.

At the trial, Crouch cross-examined the Commonwealth's witnesses in detail, and from such admissions as he gained from them in favor of Stokes, and the testimony of Stokes that he acted in self-defense, argued in favor of his client.

At the conclusion of the hearing, the court dismissed the petition for the writ of *habeas corpus*, and in the order made the following statement: "Petitioner was ably, competently and effectively represented by Thomas C. Crouch, Jr., an attorney of his own choosing; that said attorney thoroughly investigated the case, interviewed all witnesses, who had any connection with the same, and was adequately prepared for trial; * * * that there was no basis for an appeal of said judgment; that petitioner has failed to bear the burden in showing that he is illegally detained; and that petitioner was not

denied any of his constitutional rights in connection with the aforesaid trial [October 24, 1963]."

Shortly after his conviction, Stokes asked his niece to see Crouch, and tell the latter that he would like to appeal his conviction. In response, Crouch, on November 20, 1963, wrote Stokes that he had given "a great deal of thought" to the case during the time between the trial and the day of his sentencing; that he had several conferences with the judge, the Commonwealth's Attorney, and the Assistant Commonwealth's Attorney and each had refused to recommend a sentence less than that imposed. Further, Crouch said in the letter: "In fact, the Judge said you were lucky that you were not sentenced to the electric chair instead of receiving life imprisonment. This was the best I could do with all my efforts in your behalf. * * * there is absolutely no grounds on which to obtain appeal * * * I do not believe that the Supreme Court would give the matter serious consideration under these circumstances."

Frustrated in his efforts to get Crouch to perfect an appeal, Stokes undertook to prepare one himself. On December 19, 1963, he filed, in the Clerk's Office of the Hustings Court, an affidavit dated December 12, 1963, alleging that he was "without funds and unable to employ counsel to prosecute his cause for him," and prayed that he be allowed to proceed *in forma pauperis*. On the same day he filed a notice of appeal in the clerk's office, also dated December 12, 1963, to which was attached a certificate that a copy thereof "was handed over to the proper authority of the Virginia State Penitentiary to be forwarded to the Attorney General of Virginia, this 12th day of December, 1963." No action was taken upon either paper.

Stokes also filled out his assignments of error, a designation of the parts of the record to be printed, and a notice to transmit the record, and attached to each a certificate dated December 24, 1963, that copies had been "handed over to the proper authority of the Virginia State Penitentiary to be forwarded to the Hon. Robert Y. Button, Attorney General of Virginia, on December 24, 1963." The last mentioned papers were not filed in the Clerk's Office of the Hustings Court. The Attorney General, on January 2, 1964, forwarded the copies received in his office to the Commonwealth's Attorney of the City of Richmond. Thereafter, on January 8, 1964, the judge of the Hustings Court, Huntley, informed Stokes by letter that his request to transmit the record was denied because, "it was lodged with the Clerk of this Court after the time prescribed by law."

Stokes filed his petition for a writ of *habeas corpus* on June 1, 1964. The respondent, Peyton, Superintendent of the Virginia State Penitentiary, filed his answer on July 1, 1964, in which he denied the allegations of the petitioner, and prayed that counsel be appointed to represent Stokes, and the latter be given a plenary hearing. Subsequent to that answer, present counsel for Stokes was appointed, and has represented him since.

## I

The first question presented is whether Stokes had the effective aid of counsel upon his trial for murder. This question is answered in the affirmative for the reasons stated in *Bobby Ray Yates* v. *Peyton, Superintendent,* etc., 207 Va. 91, 147 S. E. 2d 767 and *Peyton, Superintendent, etc.* v. *James E. Fields,* 207 Va. 40, 147 S. E. 2d, 762, this day decided, and the cases and authorities cited therein. We agree with the trial judge that there was shown no fatal deficiency in the representation of Stokes by Crouch.

Stokes was represented by a competent lawyer, who had been engaged in the general practice of law since 1940. Upon employment, he immediately undertook to apprise himself of the facts and circumstances surrounding the case, and after consideration decided that the only defense that could be raised was that of self-defense. He advised his client to enter a plea of not guilty, and to be tried by the court rather than risk the outcome of a trial by jury on evidence that showed defendant to have committed a cold blooded murder. He investigated the case, interviewed all witnesses that he was able to find who knew anything about the case.

## II

The determination of the question whether Stokes was denied his right of appeal is controlled by what we held in *Cabaniss* v. *Cunningham,* 206 Va. 330, 143 S. E. 2d 911, and *Thacker* v. *Peyton,* 206 Va. 771, 146 S. E. 2d 176, and the cases and authorities cited in those cases.

In the *Cabaniss* case, *supra,* 206 Va., pages 333, 334, and in the *Thacker* case, *supra,* 206 Va. page 773, we said, citing holdings of the Supreme Court and the lower federal courts, that the failure to appoint counsel to assist an indigent defendant in making an appeal from a conviction is a denial of his constitutional rights, even though court-appointed counsel may think there are no grounds for review,

or the trial judge may think an appeal to be frivolous, or without merit.

Here, the evidence shows that Stokes, after his conviction, promptly notified his attorney, Crouch, that he desired to appeal his conviction. When he learned that Crouch would not aid him in making an appeal, he undertook to act for himself by filing in the clerk's office an affidavit of poverty and a notice of appeal. In addition, he filled out and forwarded his assignments of error, a designation of the parts of the record to be printed, and a notice to transmit the record, to the Attorney General on December 24, 1963. Thus, he gave notice to his counsel, to the trial court, and to the Attorney General of his desire to appeal. It is true that he did not comply with all of the formalities of the law in filling out and filing the necessary papers; but he is an illiterate man, and could not be expected to act with the intelligence of one trained in the law. When he gave notice of his desire to appeal, Stokes was an indigent, without the aid of counsel, and the trial judge should have appointed counsel to assist him.

For the above reason, we vacate the order of September 3, 1964, and remand the case to the trial court, with direction to appoint counsel to assist Stokes in applying for an appeal from his conviction of murder; that it furnish him with a free transcript or narrative of the evidence and other necessary papers for an appeal, within a reasonable time, not exceeding sixty days after appointment of counsel; that upon certification of the transcript, defendant's counsel shall be furnished a copy thereof, and of any other relevant parts of the record; and counsel shall then prepare and present a petition for appeal to this Court, or to one of its Justices, as provided by law, within sixty days after the evidence is so certified.

If these procedures cannot be complied with, then the defendant, Stokes, shall be granted a new trial, or be released from further custody.

*Reversed and remanded.*