# Richmond

BOBBY RAY YATES v. C. C. PEYTON, SUPERINTENDENT OF THE VIR-
GINIA STATE PENITENTIARY.

April 25, 1966.

Record No. 6165.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*J. Taylor Williams*, for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of Cumberland County, wherein a petition for a writ of *habeas corpus ad subjiciendum* filed by Bobby Ray Yates, sometimes hereinafter called petitioner, against C. C. Peyton, Superintendent of the Virginia State Penitentiary, sometimes hereinafter referred to as respondent, was denied and dismissed.

At the time the order was entered, petitioner was being detained by respondent pursuant to a judgment order of the Circuit Court of Cumberland County entered April 28, 1960, whereby he was sentenced to serve a term of three years in the penitentiary upon each of three convictions for statutory burglary and one year upon a conviction for the possession of burglary tools, making a total of ten years.

On April 14, 1964, petitioner filed a petition for a writ of *habeas corpus* in which he alleged, essentially, that his detention was unlawful because he was denied his constitutional right to the effective assistance of counsel at the trial which resulted in his four felony convictions. The petition was later amended to include an allegation that petitioner had been denied a fair and impartial trial because he was tried before the jury in prison clothing. A plenary hearing was had on August 4, 1964, and the petition was subsequently dismissed. We granted petitioner a writ of error.

The record reveals that on April 26, 1960, petitioner was indicted in the Circuit Court of Cumberland County on three charges of statutory burglary and one charge of possessing burglary tools. On the same day, William R. Blandford, the Commonwealth's attorney of Powhatan county, was appointed to represent him. At that time Blandford conferred with petitioner for twenty or thirty minutes concerning the charges that were pending against him. Blandford had in his possession a pre-sentence report dated April 21, 1960, which pertained to another offense. The report had been signed by

the probation and parole officer of Cumberland county. It contained, among other things, a written confession signed by petitioner in which he admittted his guilt of the four charges in question. Blandford went over the report with petitioner and questioned him about its contents. Sometime thereafter he talked with the Commonwealth's attorney of Cumberland county and learned that the Commonwealth would recommend a sentence of five years upon each of the four indictments on pleas of guilty. After a consultation with petitioner concerning the twenty-year recommendation had taken place it was decided that the Commonwealth's offer be rejected; that a plea of not guilty be entered, and that the case be tried before a jury.

The case was continued and came on for trial before a jury two days later. At that time, petitioner was serving a sentence at the State Farm for a prior conviction, and he was brought into court wearing prison clothes. He testified in the *habeas corpus* proceeding that he was never asked if he objected to being tried in prison clothes and that his wife had brought "civilian clothing" to court which he could have worn. He admitted, however, that the question of clothing did not enter his mind at the time. Blandford testified that he was "sure" that Yates offered no objection and that he (Blandford) did not consider it detrimental for petitioner to be tried in prison clothes. The trial court's final order stated that "counsel for the accused waived any objection to the accused appearing in Court in prison clothing."

During the trial on the indictments, Yates' co-defendant, Losie Browning, was present in the courtroom. Browning had also been represented by Blandford and had been tried two days previously. The record does not show what disposition was made of his case. Petitioner thought that Browning's testimony would establish his innocence of the four charges, but Blandford was of opinion that Browning would not aid the defense, and he did not call him to the stand. Blandford testified:

"I know that in the course of—in defending Browning I conferred with him, and I'm sure that if Yates had had an alibi and there was really a question in my mind whatsoever as to an adequate defense, or if Browning would have made a good defense witness—if it had come to my knowledge after my questioning of Browning, then I certainly would have had him on the stand."

Blandford also testified that "it wouldn't have been to the best interest of the accused if he had been placed on the stand, in light of the confession and in light of primarily what he had told me and in

light of Browning's testimony." [1] He further stated that he did not "put any defense witnesses on"; that he cross-examined the Commonwealth's witnesses, and that "the main purpose of pleading not guilty * * * was to get * * * the least amount of time for Yates as possible."

According to Yates, Blandford conferred with him twice before the trial, once on the day of appointment for twenty to thirty minutes and once on the day of the trial itself for approximately thirty minutes. Blandford was asked if he considered two days an adequate time for preparation of the case, and he replied: "I * * * considered it adequate. If I did not consider it adequate, I would not have tried it and I would have requested a postponement, a continuance."

Sometime "[a]fter the trial" Blandford served a warrant upon Yates which charged him with grand larceny in Powhatan county. Blandford was asked:

"Q. Mr. Blandford, on the date of this trial, did you have in your pocket a warrant for the arrest of your client on a larceny charge in Powhatan?

"A. Judge, I don't know whether I had a warrant in my pocket or not. I know that an investigation had gone on and whether it was before or after I don't know, but I do know that there was no action pending against Yates at the time I was representing him—at the time I represented him. I know later that an indictment was filed against Yates. * * * After the filing of the indictment in Powhatan we did not try the accused within three terms of court, intentionally, and it was automatically dismissed."

Yates admitted that he was never tried upon the larceny charge. He said, "I think it was *nolle 'processed.'* "

In the order denying and dismissing Yates' petition for a writ of *habeas corpus,* the judge, who was not the presiding judge at the time petitioner was tried and convicted, found "* * * that petitioner was ably, competently, and effectively represented by William R. Blandford, an attorney who had been appointed by the Court to represent him on April 26, 1960; that said attorney carefully prepared for the trial of the case and represented petitioner at his trial to the best of his ability; that the fact that the petitioner was dressed in prison clothing at the time of his trial did not deprive him of any right guaranteed to him by the Constitution of Virginia or the Con-

[1] Apparently Blandford was referring to the testimony that Browning had given at the time of his trial, because Browning did not testify at the trial of Yates.

stitution of the United States; that petitioner has failed to bear the burden in showing that he is illegally detained; and that petitioner was not denied any of his constitutional rights in connection with the aforesaid trial in this Court."

Petitioner's assignments of error present two questions for our determination: (1) whether petitioner was effectively represented by his court-appointed counsel; and (2) whether petitioner's appearance before the jury in prison clothing was prejudicial to his right to a fair and impartial trial.

In support of his contention that his court-appointed attorney did not effectively represent him, petitioner says, among other things, that the time allowed counsel to prepare the case was "grossly inadequate"; that counsel did not interview any witnesses other than Losie Browning; that Blandford failed or refused to call Browning as a witness in petitioner's behalf; that he did not investigate the circumstances surrounding the alleged confessions; that he did not interview the officers or owners of the stolen property; and that he merely interviewed petitioner for a total time of about an hour, consulted with the Commonwealth's attorney on the day the indictments were returned, cross-examined the witnesses for the prosecution, and presented his arguments to the jury. Petitioner further argues that by virtue of his office as a Commonwealth's attorney Blandford was confronted with a conflict of interest and should not have accepted the appointment. The latter assertion presents the central issue involved.

The propriety of the representation of an accused by a Commonwealth's attorney in counties and cities outside of the jurisdiction which he serves in such capacity has long been a subject of discussion by the bar of this Commonwealth.

Pursuant to a resolution adopted by the Council of the Virginia State Bar on May 1, 1958, a special committee was appointed "to consider, and report its opinion as to whether or not, and in what circumstances it is proper for Commonwealth's attorneys, city attorneys and town attorneys in Virginia to defend criminal cases." After a lengthy study of the problem an opinion dated October 30, 1959, was rendered. It is recorded as Council Opinion No. 2 in Opinions of Virginia State Bar (1965).

The committee considered, among other things, the case of *In re Wakefield*, 107 Vt. 180, 177 A. 319, and quoted this statement from it: "* * * the practice of some state's attorneys to appear in another county in the state and defend a respondent charged with committing a crime in such other county, or to appear in proceedings in which

the state was an opposing party or had adverse interests * * * is unethical and improper and it should not be followed or countenanced. * * *"

The Committee's opinion stated in part:

"* * * The committee regards a change in the practice to be proper and desirable, but considers the complete prohibition of the defense of criminal cases by Commonwealth's attorneys, in the particular circumstances so long existing in Virginia, to be a legislative matter and not a matter of professional ethics. It is the opinion of the committee that the appropriate procedure is a recommendation by the Virginia State Bar to the General Assembly of Virginia that at the same time: (1) the Commonwealth's attorneys be prohibited by law from engaging in the defense of any criminal case; and (2) that the compensation of Commonwealth's attorneys be substantially increased to a level adequately providing for their loss of income as a result of this change in law.

\* \* \* \* \*

"* * * If there is any reasonable doubt that the case is a proper one for the Commonwealth's attorney to defend, he should not defend the case. If, upon a consideration of all the material factors in the particular case, there is clearly no possible conflict of interest, real or apparent, and if the prestige of the office of Commonwealth's attorney is in no way used in defense of the case, then it is not unethical for a Commonwealth's attorney to defend a criminal case in a city or county other than that in which he has official duties, unless and until such practice is prohibited by law."

In the recent case of *Goodson* v. *Peyton*, 351 F. 2d 905, Goodson, a Virginia prisoner, attacked his escape conviction in the Circuit Court of Powhatan County on the ground that his court-appointed counsel was the Commonwealth's attorney for Cumberland county. The court found, among other things, that there was no conflict of interest in the case; that Goodson had been effectively represented, and that in light of the simplicity of the charge he had suffered no actual prejudice by reason of the fact that his court-appointed counsel was the Commonwealth's attorney for another county. The court noted, however, that possibilities of conflicts of interest are inherent in a situation where a Commonwealth's attorney undertakes the role of defense counsel in an adjoining county and that the possibilities become all the greater when counsel is court-appointed. In the course of its opinion the court discussed Council Opinion No. 2, *supra*, and stated in part:

"Conflicting interests are at least possible in the practice which Goodson attacks here. The Commonwealth's Attorney is an official of the Commonwealth. His compensation is paid in part directly by the Commonwealth. While his duties of active prosecution are limited largely or entirely to the county in which he lives, that is only a part of his larger responsibility of enforcement of the laws of the Commonwealth. Each such attorney may have assigned to him a particular row to hoe, but the overall objective is the cultivation of the entire field. That objective can be achieved only if each Commonwealth's attorney tends his row and does not obstruct his fellows.

\*    \*    \*    \*    \*

"Since conflicts of interest are so likely, however, and since in most cases in which they are not apparent on the surface, one cannot know with assurance that there were no subliminal or concealed conflicts which may have affected the outcome of the trial, we think it may well be that the only workable rule of the future will be a per se one, in which it would be presumed that one involuntarily represented by a public prosecutor in a criminal trial has not had the fair trial to which he is constitutionally entitled. In view of the development of the law, as evidenced by recent Supreme Court decisions and Council Opinion No. 2 rendered by the Council of the Virginia State Bar in 1960, the entire question will no doubt be reviewed by the Legislature and the courts of the State." 351 F. 2d at pp. 908, 909, 910.

Historically speaking, the practice of permitting a Commonwealth's attorney to defend persons charged with crimes in cities and counties outside of the jurisdiction he serves in such capacity has existed to some extent since the office of Commonwealth's attorney was established. We agree with Council Opinion No. 2 that this perplexing matter constitutes a legislative problem. However, we do say that in our view it is bad practice for a court to appoint a Commonwealth's attorney to defend an indigent person charged with a crime and that such practice should be discontinued.

■ Under the facts and circumstances of the case at bar, we cannot say that the mere fact that Blandford was a Commonwealth's attorney for another county rendered his assistance to petitioner ineffective. Petitioner argues that he was prejudiced by the fact that "immediately after the trial" Blandford, acting in his official capacity as Commonwealth's attorney, "produced and served" upon him a warrant which charged grand larceny in Powhatan county. The record does not support petitioner's claim that the warrant was served

"immediately" after the trial. The evidence merely showed that it was served "after the trial".

It is true that Blandford was specifically asked on cross-examination whether he had the warrant in his pocket on the date of trial and that he replied, "I don't know." He said, however, that there was no action pending against petitioner in Powhatan county at the time he represented him and that although petitioner was later indicted for the offense it was "intentionally" dismissed. Thus, it is apparent that petitioner was not in any way prejudiced by the fact that the warrant was served upon him after the trial. On the contrary, Blandford's action of intentionally permitting the trial to be continued past three terms of court and dismisssing the charge was unquestionably beneficial to petitioner.

It is well established that a person serving a sentence in the penitentiary who seeks his release by *habeas corpus* on the ground of ineffective assistance of counsel has the *onus* of proving the charge made by a preponderance of the evidence. A showing of prejudice or harmful consequence is required before a conviction will be overturned on the ground that counsel failed to do something which might have been done. Ordinarily, only in those extreme instances where the representation by counsel is so transparently inadequate as to make a farce of the trial is a person deprived of effective assistance. See *Peyton* v. *Fields*, 207 Va. 40, 147 S. E. 2d 762, this day decided, and cases and authorities cited therein.

Petitioner's contention that the time allowed his court-appointed attorney to prepare for trial "was grossly inadequate" is without merit. Two days elapsed between the time of counsel's appointment and his first consultation with petitioner until the time of trial. Blandford testified that the time was adequate and that if he had not considered it sufficient he would have sought a continuance. It is true that the evidence discloses that Blandford's interviews with petitioner consumed about an hour, but there was no showing that this time was not sufficient to permit him to obtain the information that he required to prepare an adequate defense. See *United States* v. *Ray*, 351 F. 2d 554, 555. Blandford discussed with petitioner the probation officer's report which contained his confession of guilt to the charges. Petitioner has not contended that the confession was involuntary. Blandford also consulted with the Commonwealth's attorney.

Petitioner also alleges that his attorney should have called Losie Browning, who was present in the courtroom, as a witness in his behalf. Blandford had conferred with Browning and was of opinion that

it was in the best interest of petitioner not to elicit his testimony. There was no showing of what his testimony would have been at the time of the trial.

Moreover, there was no showing of prejudice or harmful consequence resulting from Blandford's alleged failure to interview the officers or owners of the stolen property or to do any other act. Stated in another way, the evidence adduced falls short of establishing that counsel failed to do anything that he should have done or did anything that he should not have done which prejudiced petitioner's trial in any way. Certainly, we cannot say that the representation afforded petitioner was so transparently inadequate as to render the trial a farce or a mockery of justice.

As has been noted, the prosecuting attorney recommended sentences totalling twenty years on pleas of guilty. This recommendation was rejected, and petitioner received sentences in the aggregate of ten years on pleas of not guilty, which were exactly one-half of the total sentences the Commonwealth had demanded. This result manifestly bolsters the respondent's contention that petitioner was effectively represented.

On the record before us we conclude that petitioner was effectively represented by his court-appointed attorney.

Finally, petitioner asserts that his appearance before the jury in prison clothing was prejudicial to his right to a fair and impartial trial. While we disapprove such practice, we cannot say that under the facts and circumstances of this case petitioner's right to a fair trial was adversely affected by his dress. In light of the charges to which he had confessed and the sentences thereon demanded by the Commonwealth, the jury's verdict indicates that no prejudice resulted. See *Collins* v. *State*, 70 Okl. Cr. 340, 106 P.2d 273.

Furthermore, the accused made no motion for permission to change to civilian clothes. Petitioner admitted that the question of clothing never entered his mind. His attorney testified that he did not consider it detrimental for petitioner to be tried in his prison clothes and that if he had considered it detrimental he would have made an objection.

In our view, a prisoner has no constitutional right to be tried before a jury in civilian clothes. A denial of motion to be so tried may be reached by way of an appeal. Counsel for Yates affirmatively "waived any objection to the accused appearing in Court in prison clothing", and Yates is bound by that waiver.

For the reasons stated, the judgment appealed from is

*Affirmed.*